IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE LABORERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; and BOARD OF TRUSTEES OF THE LABORERS TRAINING AND RETRAINING TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>       Plaintiffs,<br>v.<br><br>CHRISTOPHER THOMAS RUCKER, individually and dba CHRISTOPHER THOMAS RUCKER, GENERAL CONTRACTOR and CTR PRECISION BUILDERS,<br><br>       Defendant.<br>_____ / | No. C-06-06163 PJH (EDL)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>Hearing: July 10, 2007 |

      The hearing on Plaintiff's Motion for Default Judgment against Defendant Christopher Thomas Rucker, individually and dba Christopher Thomas Rucker, General Contractor and CTS Precision Builders ("Defendant"), came on for hearing on July 10, 2007, at 9:00 a.m. in Courtroom E, 15th Floor, Federal Building, 450 Golden Gate Avenue, San Francisco, California. 94102. Defendant did not appear or file any opposition.

      On October 2004, CTR Precision Builders, by its General Contractor Christopher Thomas Rucker, became a signatory to a collective bargaining agreement with the Northern California District Council of Laborers "Memorandum Agreement." See Compl. ¶9. Pursuant to the

Memorandum Agreement, and predecessor agreements, Rucker agreed to be bound by all provisions of the Laborers' Master Agreement For Northern California ("Master Agreement").  See id.  By virtue of the Master Agreement and written trust agreements, Rucker promised and agreed that: (1) he would pay employee fringe benefit contributions into each Trust Fund in regular monthly installments commencing on or before the 15th day of each month immediately succeeding the month in which the employee's work was performed; (2) that in the event that any of the said monthly installments were not paid in full on or before the 35th day of the month on which such contributions became due, he would pay interest on the delinquent contribution in the amount of 1.5% per month until paid in full, and would also pay the amount of $150.00 for each delinquent contribution as liquidated damages, and not as a penalty; and (3) that if any suit with respect to any of the said contributions of payments were filed against them, he would pay into said trust funds the attorneys' fees, costs, and all other expenses incurred in connection with such suit.  See Compl. ¶10. The Master Agreement also required that Rucker allow Plaintiffs to examine and copy CTR Precision Builders' records and pay for the cost of any audit that reveals more than one thousand dollars in delinquent contributions.  See Article IV, Section 7 of Exhibit E attached to Hagan Decl.

On October 2, 2006, Plaintiffs filed a complaint under Section 502 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1132) and Section 301 of the Labor-Management Relations Act (29 U.S.C. § 185(a))("ERISA"), alleging that Defendant Rucker violated the Master Agreement by failing to make trust fund contributions for each hour worked by covered laborers and failing to submit to an audit of their books and records as required of them by the collective bargaining agreement, the written trust agreements, and by provisions of federal law.  See Compl. ¶1.  The complaint sought an order compelling Defendant to pay damages for breach of the collective bargaining agreement in an amount not less than $16,480.23, plus additional accrued interest and liquidated damages, and other or further amounts.  See id. at ¶14.  The complaint also sought an amount not less than $17,660.52, plus additional accrued interest, liquidated damages, amounts as may be awardable under ERISA 502(g)(2) and that Rucker be compelled to forthwith submit to an audit of his books and records by Plaintiff's auditors to verify the precise amount owed by Defendant.  See id. at ¶18-22.

Defendant failed to answer the complaint or otherwise defend the action. On January 12, 2007, upon Plaintiff's request, the Clerk of this court entered Defendant's default under Rule 55(a). See Fed.R.Civ.P. 55(a). By its default, Defendant is deemed to have admitted the well-pleaded averments of the complaint except those as to the amount of damages. See Fed.R.Civ.P. 8(d).

On May 21, 2007, Plaintiffs submitted a Motion for Default Judgment with revised calculations of requested relief. See Proposed Judgment Against Christopher Thomas Rucker and CTR Precision Builders ("Proposed Judgment") at ¶1. Plaintiffs now seek an order compelling Defendant to pay $35,115.22: $18,513.32 of delinquent contributions; $9,356.02 of interest on delinquent contributions; $723.54 of liquidated damages and interest on certain contributions paid belatedly; $6,522.34 of attorneys' fees and costs. See Exhibit H attached to Hagan Decl. at 1; Exhibit J attached to Hagan Decl. at 1; Exhibit K attached to Hagan Decl at 1; Proposed Judgment at ¶1. Also, Plaintiff seeks additional interest and associated liquidated damages accruing at the rate of 1.5% per month, until paid, and a mandatory injunction ordering Defendant to allow a Trust Funds auditor to come onto Defendant's premises to conduct an audit of its financial records for the period from October 6, 2004 through April 31, 2007. See Proposed Judgment at ¶2.

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed.R.Civ.P. 55(b)(2). Defendant is not an unrepresented minor, incompetent, or in the military. See Richman Decl. at ¶4. In accordance with the Notice of Reference, Time, and Place of Hearing filed on June 14, 2007, any opposition to Plaintiff's motion for default judgment was due on or before June 19, 2007. See Plaintiffs' Reply at 2. No opposition was filed.

In an action to enforce payment of delinquent contributions, "the court shall award the plan (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of (i) interest on the unpaid contributions or (ii) liquidated damages provided for in the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs . . . ." 29 U.S.C. § 1132(g)(2). An award under section 1132(g)(2) is appropriate based on the amount of contributions that were delinquent at

3

the time of suit, even if the defendant tendered the unpaid contributions prior to judgment. See Northwest Adm'rs, Inc. v. Albertson's, Inc., 104 F.3d 253, 258 (9th Cir. 1996) ("[M]andatory fees are available under § 1132(g)(2) 'notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves.'") (quoting Carpenters Amended and Restated Health Benefit Fund v. John W. Ryan Constr. Co., Inc., 767 F.2d 1170, 1175 (5th Cir. 1985)); Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 215-16 (9th Cir. 1989) ("[W]hen (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages," section 1132(g)(2) is triggered and a liquidated damage award is mandatory) (emphasis in original, citations omitted); see also Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1507 (2nd Cir. 1995) ("[T]he amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency."). The Court therefore can award unpaid contributions, as well as liquidated damages and interest on both unpaid contributions and the ones that Defendant paid belatedly. Id.

Plaintiffs have the burden of proving their damages through testimony or written affidavit. To prove their damages, Plaintiffs submitted the declarations of Ronald Richman, Plaintiffs' counsel, and of John Hagan, the manager of the Accounts Receivable Department of the Laborers Funds Administrative Office of Northern California, Inc., which provides administrative services to the plaintiff trust funds. Mr. Hagan examined the trust fund records as of May 21, 2007 and determined that Rucker owed benefit contributions for a number of months to the Laborers Trust Funds. See Hagan Decl. at ¶¶ 18-20. He determined that the minimum amount of contributions Defendants owed totaled $24,664.77 plus reasonable attorney's costs and fees, as follows: $18,513.22 in delinquent contributions; $4,678.01 in interest on delinquent contributions; $750.00 of contractual liquidated damages on delinquent contributions; and $723.54 of liquidated damages and interest on certain contributions paid belatedly. See Hagan Decl. at ¶¶ 21-24. Accordingly, Plaintiffs state in their Reply that they seek to recover $18,513.32 in delinquent contributions pursuant to 29 U.S.C. §1132(g)(2)(A); $4,678.01 in interest on delinquent contributions pursuant to 29 U.S.C.

4

1  §1132(g)(2)(B); $4,678.01 in additional interest pursuant to 29 U.S.C. § 1132(g)(2)(C) (providing
2  for damages in an amount equal to the greater of (i) interest on the unpaid contributions, or (ii)
3  liquidated damages provided for the Plan in an amount not in excess of 20 percent (or such higher
4  percentage as may be permitted under Federal or State law) of the amount determined by the court
5  under subparagraph (A)); and $723.54 of liquidated damages and interest on certain contributions
6  paid belatedly. See Plaintiffs' Reply at 2; Hagan Decl. at ¶¶ 21-26.  The amount of $18,513.32
7  appears to be a typographical error: the submissions indicate that delinquent contributions totaled
8  $18,513.22 and not $18,513.32. See Exhibit H attached to Hagan Decl. at 1.

9       The Master Agreement provides that an employer who is in default will pay "reasonable
10 attorneys fees, court costs and all other reasonable expenses incurred in connection" with a suit to
11 collect delinquent contributions. See Exhibit D attached to Hagan Decl. at 2.  Plaintiffs have
12 submitted the May 21, 2007 declaration of attorney Ronald Richman to prove attorneys' fees and
13 costs of $4,685.78. Mr. Richman calculates that he, along with other members of his firm, spent 20.8
14 hours at the rate of $225.00 per hour prosecuting this action, for a subtotal of $4,680.00 of attorneys'
15 fees incurred in prosecuting this action. See Richman Decl. at ¶5. Mr. Richman also declared $5.78
16 of costs. Id. In addition, original counsel for Plaintiffs Trust funds charged attorneys' fees and costs
17 for this lawsuit in the amount of $1,836.56. See Exhibit L attached to Hagan Decl. at 9.  Plaintiff's
18 total attorneys' fees and costs were $6,522.34 as of June 22, 2007. See Richman Decl. at ¶5; Hagan
19 Decl. at ¶ 25.

20      Plaintiffs also seek injunctive relief in the form of an order requiring Defendant to submit to
21 an audit of CTR Precision Builders' financial records by an auditor of Plaintiffs' choice. Id.  The
22 Master Agreement provides for an audit of signatory employers. See Exhibit E attached to Hagan
23 Decl. at 2. Plaintiffs have demanded that Defendant submit to an audit and he has not complied. See
24 Compl. at ¶22. Plaintiff seeks auditor access to "such books, records, papers and reports of defendant
25 that are relevant to the enforcement of the collective bargaining agreement and Trust Agreements,"
26 including, but not limited to, the following for the period of October 6, 2004 through the present:
27   //
28

5

> Individual Earnings Records; federal tax forms W-3/W-2 and 1069.1099; reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' Compensation insurance; employee time cards; payroll registers/journals; quarterly payroll tax returns (Form 941); check register and supporting cash vouchers; forms 1120, 1040 or partnership tax returns; general ledger; source records, including time cards and time card summaries for all employees; certified payroll reports; personnel records indicating job classifications and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; job cost records; records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation of defendant's financial records.

See Proposed Judgment at ¶2. As Defendant is contractually obligated to submit to an audit, and as he has not submitted to such an audit, Plaintiffs have demonstrated that injunctive relief is appropriate.

For the foregoing reasons, the Court recommends as injunctive relief that judgment be entered compelling Defendant to permit a Trust Funds auditor to come onto Defendant's premises and to submit to an audit of Defendant's financial records for the period from October 6, 2004 through April 30, 2007, for the purpose of determining the amount of fringe benefit contributions owed, and that Defendant be ordered to provide relevant records requested by the auditor as set forth above.

In addition, the court recommends that judgment be entered in Plaintiffs' favor for $35,115.12: $18,513.22 in delinquent contributions; $9,356.02 in interest on those delinquent contributions; $723.54 in liquidated damages and interest on certain contributions that Defendant paid belatedly; $6,522.34 in attorneys' fees and costs. Post-judgment interest thereon will accrue at 1.5% per month until judgment is fully satisfied. See Section 28A of the Laborers Master Agreement; Trust Agreement Article IV § 3. The Court also recommends that the district court reserve jurisdiction of the parties and the subject matter to enforce the injunction and to entertain a motion for a further money judgment, should the audit disclose additional amounts that may be owed by Defendant to the Trust Funds.

//
//
//
//

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy. See 28 U.S.C. § 636 (b)(1)(C); Fed.R.Civ.P. 72 (b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

**IT IS SO RECOMMENDED.**

Dated: July 11, 2007

*Elizabeth D. Laporte*

ELIZABETH D. LAPORTE
United States Magistrate Judge